■ JERRY ZITO, Respondent, v EUGENE FRIEDMAN, Appellant.—Judgment, Supreme Court, Bronx County, entered on July 27, 1979, in favor of plaintiff, after trial to a jury, reversed, on the law, and the complaint dismissed, without costs. Plaintiff, an unemployed alcoholic construction worker, was injured as the result of "a little argument with some guy" who "belted" him to the extent that he was brought on January 5, 1977 to hospital with multiple fractures of both sides of the jaw, compounded to the extent that a piece of jaw had cut through a nerve and protruded through the skin, and another piece of bone had become lodged under the skull. His condition as to sobriety was such that it was necessary to apply restraints before he could be examined, and it was necessary, before X rays could be made, to devise a bandage sling to support the injured jaw. Defendant-appellant, a certified oral surgeon, examined and treated plaintiff-respondent. The patient had no natural upper teeth, and had theretofore been an upper plate, never replaced. There being no upper anchorage for wires to keep the jaw bones in position during healing, defendant devised a supportive structure consisting of wires running under the skin across the cheek bones and through the nose. A similar structure, anchored to the seven lower teeth, held the lower jaw in place. Antibiotics were administered on each visit* except at one specified below. On January 23, 1977, plaintiff was advised, after treatment, to return to defendant's office in 48 hours; he did not return for eight days and no communication could be had with him in the interval because the address and phone number he had left were false. After irrigation and self-care instruction, he was again told to return in 48 hours; he returned in four days, and was found to have developed an infection. This condition was treated by incision and insertion of a drain. The next day, he was again irrigated, medicated, and dressed, and two days

---

* Defendant's records did not reflect routine administration of antibiotics but he testified to this, and it was verified by plaintiff himself during his testimony that antibiotic pills were given to him.

thereafter a molar, originally left in the fracture line so as not to impede aligned healing, was extracted. On February 8, all signs of infection having gone, indicated by discharge of blood only, the abscess was permitted to heal without further draining. Three days later, some of the wire structure was removed and, on February 17, the swelling at the site being reduced in size, no antibiotic was administered in order that plaintiff's situation might be evaluated, and to avoid building up an immunity to the antibiotic in the infective micro-organisms. Plaintiff was told to return a week later, at which time the evaluation was to be made; instead, he went to the hospital's emergency room, complaining of pain. Personnel there telephoned defendant's office, and transmitted to plaintiff defendant's instruction to come to the office on the following day; he did not come then, but he did appear on March 19. When plaintiff did come to the office, defendant indicated that the time had come to remove the rest of the wire structure, but, since the original hospital would not receive him for the necessary surgery because of an unpaid bill for prior service, it was suggested that he sign himself into the alcoholic facility at a State hospital. He did so, the wires were removed, and the professional relationship terminated; plaintiff did not thereafter appear at defendant's office. Plaintiff charges professional malpractice in two particulars: suspension of antibiotics on February 17, compounded by failure to communicate with the patient after the second surgery, i.e., final removal of the wire, and abandonment of the case prematurely after that procedure. Defendant testified he had followed standard procedure; indeed, respondent's brief recites that "treatment given him at Southside Hospital was routine fractured jaw treatment and is not the subject of any malpractice claim." Nor is there any specification of impropriety in performance of the State hospital surgery. The malpractice of which defendant is accused was so characterized by a witness, called as an expert, who was a dental general practitioner and had never performed the sort of professional work for which defendant was certified by the appropriate board. Nor was it shown that plaintiff's allegedly malformed jaw, postoperatively, resulted from anything done by defendant, except possibly by reason of faulty healing. No bone specialist was called as to alleged necrosis of jaw bones. Nor is there a showing of abandonment of the case; indeed, there· was uncontradicted evidence of attempts by defendant, as late as June 16, 1977 to find plaintiff, seemingly a repetition of the futile attempts theretofore to find him. Despite this evidence, as will be seen hereinafter, the jury, never properly instructed as to burdens and standards, assessed culpability of 40% against plaintiff, obviously the result of evidence of plaintiff's irresponsible conduct, indicating his own abandonment of treatment. As far as plaintiff was concerned, he made no effect to find defendant, whose whereabouts he well knew. There was insufficient evidence to sustain malpractice by abandonment of the case. As to the cutoff—intended to be only temporary—of the antibiotic, plaintiff's expert conceded its propriety if defendant had reason to believe the infection was under control. At its worst, it would have been an error in professional judgment, and not malpractice. "The rule requiring him to use his best judgment does not hold him liable for a mere error of judgment, provided he does what he thinks is best after careful examination." *(Pike v Honsinger,* 155 NY 201, 210.) Were we not dismissing, we would have reversed for fundamental errors in the charge, requiring a new trial, at the very least. The charge omitted to instruct as to burden of proof, as to the rule here cited from *Pike v Honsinger (supra),* as to proximate cause, and as to a bad result by itself not being proof of malpractice—all flowing from the court's conviction that such instructions

were not necessary because this was "a simple case". And the insufficiently instructed jury's verdict was clearly against the weight of the credible evidence. Concur—Sullivan, J. P., Ross, Markewich and Silverman, JJ.

Yesawich, J., dissents in part in a memorandum as follows: Although I too would reverse because of the errors in the charge, I would remand for a new trial. On February 17, defendant discontinued Zito's antibiotic treatment. Dr. Herbert Bass, plaintiff's expert, read Zito's dental records as indicating he had an infection then, evidenced by marked facial swelling, and testified further that in light of that infection it was a deviation from good standard medical practice for defendant to have withdrawn antibiotic treatment. Whether plaintiff abandoned his own treatment is also at issue for Zito testified he telephoned defendant on two occasions, following his discharge from the hospital after his surgery, but defendant never returned his calls. If that testimony is found credible there is a basis for attributing some proportion of fault to the defendant. In my view both these malpractice claims present factual questions making dismissal of the complaint inappropriate.